No. 24-1942

---

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

JOHN M. KLUGE,
*Plaintiff-Appellant,*

v.

BROWNSBURG COMMUNITY SCHOOL CORP,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
Case No. Case No. 1:19-cv-02462-JMS-KMB
Hon. Jane Magnus-Stinson

---

## BRIEF OF AMICUS CURIAE INDIANA FAMILY INSTITUTE IN SUPPORT OF APPELLANT AND REVERSAL

---

Joshua D. Hershberger
HERSHBERGER LAW OFFICE
P.O. Box 233
Hanover, Indiana 47243
(812) 228-8783
josh@hlo.legal
*Attorney for Amicus Curiae*

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1942

Short Caption: John M. Kluge v. Brownsburg Community School Corporation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Indiana Family Institute

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Hershberger Law Office

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Joshua D. Hershberger    Date: 7/17/2024

Attorney's Printed Name:  Joshua D. Hershberger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [✔]  **No** [ ]

Address:  P.O. Box 233

    Hanover, Indiana 47243

Phone Number: 812-228-8783    Fax Number:

E-Mail Address: josh@hlo.legal

rev. 12/19 AK

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... 3

INTEREST OF AMICI CURIAE .............................................................. 6

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 7

ARGUMENT .......................................................................................... 9

   I.   The Indiana Constitution Requires a Free Public School System
       that Enrolls All Students and Respects Religious Exercise and the
       Right of Conscience........................................................................ 9

    a.   The Indiana Constitution Requires a Free Public School System
         that Enrolls All Students. ......................................................... 9

    b.   The Indiana Constitution Requires a Free Public School System
         that Respects Religious Exercise and the Right of Conscience..15

  II.  Brownsburg Must Exercise its Statutory Authority Consistent
       with the Indiana Constitution and Indiana Law. .........................20

    a.   Brownsburg Must Exercise its Statutory Authority in a Manner
         Consistent with the Indiana and Federal Constitutions. ..........20

    b.   Brownsburg Must Exercise its Statutory Authority in a Manner
         Consistent with Indiana Law....................................................22

CONCLUSION.......................................................................................28

CERTIFICATE OF COMPLIANCE .......................................................30

CERTIFICATE OF SERVICE ...............................................................31

# TABLE OF AUTHORITIES

## **Cases**

*Bonner ex. rel. Bonner v. Daniels*,
 907 N.E.2d 516 (Ind. 2009) .................................... 10, 11, 12, 15, 19

*City Chapel Evangelical Free Inc. v. City of South Bend*,
 744 N.E.2d 443 (Ind. 2001) ....................................................... 10, 16

*Goldberg v. Kelly*,
 397 U.S. 254 (1970) ......................................................................... 20

*Groff v. DeJoy*,
 600 U.S. 447 (2023) .................................................................... 19, 22

*Hewitt v. Westfield Washington Sch. Corp.*,
 46 N.E.3d 425 (Ind. 2015) .............................................................. 20

*Hoagland v. Franklin Twp. Cmty. Sch. Corp.*,
 27 N.E.3d 737 (Ind. 2015) ......................................... 10, 15, 17, 19

*Indiana State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*,
 865 N.E.2d 660 (Ind. Ct. App. 2007) ....................................... 14, 21

*K.C. v. Individual Members of Med. Licensing Bd. of Indiana*,
 No. 23-2366, 2024 WL 811523 (7th Cir. Feb. 27, 2024) ................ 24

*Kluge v. Brownsburg Cmty. Sch. Corp*,
 64 F.4th 861 (7th Cir. 2023) ............................................................. 9

*Kluge v. Brownsburg Cmty. Sch. Corp*,
 432 F. Supp. 3d 823 (S.D. Ind. 2020) ............................................ 17

*Linke v. Nw. Sch. Corp.*,
 763 N.E.2d 972 (Ind. 2002) ............................................................ 22

*L.W. by & through Williams v. Skrmetti,*
    83 F.4th 460 (6th Cir.) .................................................................24

*McIntosh v. Melroe Co.,*
    729 N.E.2d 972 (Ind. 2000) ..........................................................13

*Nagy v. Evansville–Vanderburgh School Corporation,*
    844 N.E.2d 481 (Ind. 2006) .............................. 11, 12, 19, 22, 26, 28

*Price v. State,*
    622 N.E.2d 954 (Ind. 1993) ..........................................................17

*State of Tennessee, et al. v. Miguel Cardonoa, et al.,*
    No. 2:24-cv-072 (E.D. Ky.  2024) ...............................................26, 27

*Smith v. Indiana Dep't of Correction,*
    883 N.E.2d 802 (Ind. 2008) ..........................................................13

*Vernonia Sch. Dist. 47J v. Acton,*
    515 U.S. 646 (1995).......................................................................22

## Constitutional Provisions

IND. CONST. art. 1, § 2 ......................................................................16

IND. CONST. art. 1, § 3 .................................................................. 9, 16, 21

IND. CONST. art. 1, § 12....................................................................13

IND. CONST. art. 8, § 1 .......................................................... 9, 14, 16, 17, 19

## Statutes

42 U.S.C. § 2000e-2(a)(1)..................................................................22

Ind. Code § 20 ....................................................................20, 27

Ind. Code § 20-26-3-3(b)(2)................................................................20, 21

Ind. Code § 20-26-3-4. .......................................................... 21, 22, 23, 28

Ind. Code § 20-33-12-2.. .................................................................25, 27

Ind. Code § 20-33-13-4.. .................................................................23, 27

Ind. Code § 20-33-7.5-2.. ...............................................................25, 27

Ind. Code § 25-1-22-1.. .......................................................................24

Ind. Code § 25-1-22-12.. .....................................................................24

Ind. Code § 25-1-22-13.. .................................................................24, 27

Ind. Code § 25-1-22-15.. .....................................................................24

## **Other Authorities**

1944 Op.Atty.Gen. No. 386 ..................................................................12

2 Donald F. Carmony, The History of Indiana 381 (1998) ....................11

Brief for the United States, *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64
    F.4th 861 (7th Cir. filed Nov. 8, 2021), ECF No. 34...........................26

Charles Kettleborough, I CONSTITUTION MAKING IN INDIANA
    295–375 (Ind. Historical Bureau in Indianapolis ed. 1971) (1916)....12

James H. Madison, *The Indiana Way—A State History* 139 (1986) ......16

Journal of the Convention of the People of the State of Indiana to
    Amend the Constitution 407–08 (Indianapolis, A.H. Brown 1851)...11

Northwest Ordinance, Section 3 (1787).................................................11

Rachel Fradette, "Indiana tells schools to ignore LGBTQ student
    protections as Title IX fight begins," WFYI INDIANAPOLIS (May 2,
    2024)...............................................................................................26

## INTEREST OF AMICI CURIAE[1]

The Indiana Family Institute ("IFI") opened its doors in 1990 as a nonpartisan public education and research organization recognized by the Internal Revenue Service as a 501(c)(3) nonprofit group. IFI consists of professional staff; a Board of Directors consisting of state, business, and community leaders; and numerous volunteers. IFI works in association with forty other Family Policy Councils across the nation as well as Focus on the Family and the Family Research Council, but the vast majority of its work and effort centers on public policy, research, and education regarding the health and well-being of all Hoosier families. IFI believes firmly that the family is the key institution of society, and that the overall health of any city, state, region, or nation is largely determined by the health of this bedrock institution. As such, IFI is committed to strengthening and improving the marriages and families of all Hoosiers and seek to partner with other organizations, groups and individuals that share that same great mission.

---

[1] The parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amicus states that no party or counsel for a party other than amicus, its members, or its counsel authored this brief in whole or in part or made a monetary contribution intended to fund the preparation or submission of this brief.

In recent years, IFI has noticed a growing trend of public schools ignoring the constitutional rights of parents, teachers, and students. Education is foundational to the project of raising children and building a strong family; and students, teachers, and parents should not face discrimination by school officials because of their political or religious views. For these reasons, IFI has publicly supported John Kluge and the right of teachers generally to live out their faith in the public school environment while respecting difference and modeling citizenship in a plural society. IFI is gravely concerned that the District Court's decision in this matter will be used as precedent for violating the religious beliefs and conscience rights of other teachers in Indiana.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Brownsburg Community School Corporation ("Brownsburg") defines its mission, which includes constitutional and statutory elements, as follows: to "…educat[e] all students and foster[] a safe, inclusive environment for all the children it serves." RSA.31-32. Brownsburg cites that mission as justification for revoking a last-name-only accommodation for Kluge, and the District Court relied on Brownsburg's interpretation of that mission in granting Summary

Judgement. RSA.34. As explained below, the District Court's decision overlooks key provisions of the Indiana Constitution and state statutes and should be reversed.

The Indiana Constitution's Education Clause simply requires a system of free public schools that enroll all students. Further, this clause is set out after the Indiana Bill of Rights in the Indiana Constitution and is subject to its protections for religious exercise and the right of conscience. State statutes also expressly prevent Brownsburg from crafting and pursuing an educational mission contrary to the Indiana Bill of Rights, and Brownsburg's decision to revoke Kluge's religious accommodation directly contradicts Indiana's public policy as set out in the Indiana Code.

In sum, the District Court's decision related to the educational mission of Brownsburg contradicts the plain language of the Indiana Constitution and state statutes. This Court should reverse and remand for entry of judgment in Mr. Kluge's favor on his discrimination and retaliation claims.

## ARGUMENT

**I.    The Indiana Constitution Requires a Free Public School System that Enrolls All Students and Respects Religious Exercise and the Right of Conscience.**

The Education Clause of the 1851 Indiana Constitution requires a free public school system that enrolls all students, but that clause does not license Indiana schools to deny the reasonable accommodation requests of teachers with deeply held religious beliefs. *See* IND. CONST. art. 8, § 1; *see* IND. CONST. art. 1, § 3 ("No law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience").

**a.    The Indiana Constitution Requires a Free Public School System that Enrolls All Students.**

Brownsburg relies "… first on the Education Clause in Article 8, Section 1 of the Indiana Constitution to define its educational mission." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 917 (7th Cir. 2023) (Brennan, J., dissenting). Further, Brownsburg interprets this provision as requiring the school to "…affirm transgender identities in public schools." *Id.* The plain text of the Education Clause and the case law interpreting that clause clearly refute this premise. *Id.*

Questions arising under the "…Indiana Constitution are to be resolved by examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our Constitution, and case law interpreting the specific provisions." *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 741 (Ind. 2015). This requires "[t]he language of each provision of the Constitution [to] be treated with particular deference, as though every word had been hammered into place." *City Chapel Evangelical Free Inc. v. City of South Bend*, 744 N.E.2d 443, 447 (Ind. 2001).

Article 8, Section 1 of the Indiana Constitution states the following:

> Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all.

The Indiana legislature has two express duties under this section. *Bonner ex. rel. Bonner v. Daniels*, 907 N.E.2d 516, 520 (Ind. 2009). First, the legislature is to generally encourage moral, intellectual, scientific, and agricultural improvements. *Id.* Second, the legislature is to provide

"…for a general and uniform system of open common schools without tuition." *Id.*

This language is consistent with the education provision in the Northwest Ordinance, which governed the territory prior to Indiana becoming a state. Northwest Ordinance, Section 3 (1787). Article 8, Section 1 of the 1851 Constitution also tracks closely with a similar section in the 1816 Constitution, with the 1851 revision of the Education Clause requiring only a system of common schools rather than a "…general system of education through college." *Bonner*, 907 N.E.2d at 520; 2 Donald F. Carmony, The History of Indiana 381 (1998). Further, the "…phrases 'general and uniform,' 'tuition … without charge,' and 'equally open to all' do not require or prescribe any standard of educational achievement that must be attained by the system of common schools." *Bonner*, 907 N.E.2d at 520. And, most specifically, the "Clause says nothing whatsoever about educational quality." *Id.*

This reading of Article 8, Section 1 is supported by the closing address by the delegates at the 1851 Constitutional Convention summarizing the changes for Indiana voters tasked with reviewing and,

ultimately, ratifying the new constitution. *See Nagy v. Evansville–Vanderburgh School Corporation*, 844 N.E.2d 481, 487 (Ind. 2006); *see* Journal of the Convention of the People of the State of Indiana to Amend the Constitution 407–08 (Indianapolis, A.H. Brown 1851); *see* Charles Kettleborough, I CONSTITUTION MAKING IN INDIANA 295–375 (Ind. Historical Bureau in Indianapolis ed. 1971) (1916); .

Concerning the Education Clause, the delegates described the "principal change" as "the abolition of county seminaries, and the application of the funds to common schools." *See Nagy*, 844 N.E.2d at 487. The summary also "…provided that the legislature shall establish a uniform system of common schools, wherein tuition shall be free." *Id.* The summary then focused on sources of revenue for the common school fund, but it did not "…state or suggest that Article 8 intended to impose upon government any duty to educate children to any particular standard of achievement." *See Bonner*, 907 N.E.2d at 521.

As set out above, the Education Clause of the 1851 Indiana Constitution simply requires the state to maintain a free common school system with enrollment available to all. *See Nagy*, 844 N.E.2d at 487; *see* 1944 Op.Atty.Gen. No. 386 (prohibiting the use of this section

without legislation to the contrary from blocking enrollment of married students or students over the age of 21).

This interpretation of Article 8, Section 1 is further supported by similar "open" language in Article I, Section 12. That section states: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." This provision, sourced from the English Magna Carta, also focuses on access rather than outcome. *See Smith v. Indiana Dep't of Correction*, 883 N.E.2d 802, 808 (Ind. 2008); *see McIntosh v. Melroe Co.,* 729 N.E.2d 972 (Ind. 2000). According to the Indiana Supreme Court, this provision simply "…guarantees access to the courts to redress injuries to the extent the substantive law recognizes an actionable wrong." *Smith*, 883 N.E.2d at 808.

Given the text and history of the Education Clause, Brownsburg's position here is curious if not hypocritical. Brownsburg maintains that the Education Clause should be read expansively and that the language

"…equally open to all" requires the school to "…affirm transgender identities in public schools." *Kluge*, 64 F.4th at 817.

But not even Brownsburg has applied this section in an expansive manner. In 2004, Brownsburg denied part-time enrollment to two home schoolers because the superintendent, "…determined that the children did not meet any of the exceptions to the school system's policy and, therefore, did not qualify for part-time or shortened schedule enrollment." *Indiana State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*, 865 N.E.2d 660, 667 (Ind. Ct. App. 2007).

The Indian State Board of Education ("ISBE"), through an administrative law judge, reversed that decision and ordered Brownsburg to enroll the students. Brownsburg then appealed to a trial court. *Id.* The trial court reversed ISBE's decision, and ISBE appealed to the Indian Court of Appeals. *Id.* That court held: "The children were not denied fulltime enrollment at BHS and, therefore, the schools have remained open to all." *Id.* at 668; *see* IND. CONST. art. 8, § 1.

Thus, in a previous case, Brownsburg argued for a very limited interpretation of the Education Clause and prevailed over two home schoolers simply seeking to participate in the school district on a part-

time basis. *Id.* Now Brownsburg is arguing—and the District Court agreed—that the same language of "equally open to all" should be read expansively to require teachers to promote transgender ideology through the use of student's transgender names and pronouns. *Kluge*, 64 F.4th at 817. This does not follow.

The Indiana Supreme Court declared the following about the Education Clause, "The historical facts do not evidence any intention to require the establishment of a public education system with any particular standards of educational output. We decline the plaintiffs' invitation to amplify the words and meaning of our Constitution as crafted by its framers and approved by its ratifiers." *Bonner*, 907 N.E.2d at 522. This Court should do the same—decline to amplify the words of the 1851 Indiana Constitution beyond the intent of its framers. *See Id.*

### b. The Indiana Constitution Requires a Free Public School System that Respects Religious Exercise and the Right of Conscience.

As noted above, questions arising under the "…Indiana Constitution are to be resolved by examining the language of the text in the context of the history surrounding its drafting and ratification, the

purpose and structure of our Constitution, and case law interpreting the specific provisions." *Hoagland*, 27 N.E.3d at 741.

The structure of the Indiana Constitution is applicable here, as the drafters included the Education Clause after the Indiana Bill of Rights and its clear protections for religious exercise and the right of conscience. *See* IND. CONST. art. 1; *see* IND. CONST. art. 8, § 1.

The 150 framers of the 1851 Indiana Constitution and the voters that ratified it did not merely copy the language of the 1791 federal First Amendment. James H. Madison, *The Indiana Way—A State History* 139 (1986); *see City Chapel Evangelical Free Inc.*, 744 N.E.2d at 446. Rather, they set out seven "separate and specific" provisions relating to religion in Sections 2 through 8 of Article 1. *Id.* For example, Article 1, Section 2 states, "All people shall be secured in the natural right to worship ALMIGHTY GOD, according to the dictates of their own consciences." And Article 1, Section 3 states, "No law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience."

IFI recognizes that the District Court previously analyzed Kluge's Indiana constitutional claims under Article 1, Sections 2 and 3 in this

case under the "material burden" standard established by the Indiana Supreme Court. *See Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 850 (S.D. Ind. 2020); *see Price v. State*, 622 N.E.2d 954, 960 (Ind. 1993). And IFI does not intend to restate those claims here.

Instead, IFI is focused on the interpretation of Article 8, Section 1 of the Indiana Constitution, taking into account the structure and text of the Indiana Constitution as a whole. *See Hoagland*, 27 N.E.3d at 741. And any analysis of Article 8, Section 1 of the 1851 Indiana Constitution must necessarily take into account Article 1, Sections 2 through 8 of that same document. *Id.*

The framers and ratifiers of the Indiana Constitution did more than set out a requirement that the state maintain a free common school system "equally open to all." *See* IND. CONST. art. 8, § 1. Rather, that provision is set out after the Indiana Bill of Rights and is subject to the guarantee that no law would "in any case whatever" infringe on the free exercise and enjoyment of religious opinions and the right of conscience. *See* IND. CONST. art.1, § 3.

Brownsburg ignores this point in the framing of its educational mission and in its treatment of Kluge. *See* RSA.31-32. Brownsburg

asserts that it has a constitutional mission to affirm transgender identities in public schools, and it disregarded Kluge's deeply held religious beliefs and conscientious objection to promoting transgender ideology. *See Kluge* 64 F.4th at 917 (Brennan, J., dissenting); Doc.113-4 at 24.

A brief review of the facts of this case emphasizes Brownsburg's constitutional error. Kluge requested a religious accommodation to Brownsburg's policy requiring teachers to use preferred names and pronouns for transgender-identifying students. SA.245, 276. Brownsburg granted that request, then later revoked it. Doc.113-4 at 24.

Kluge did not attempt to proselytize students or the school to his views, and he treated all students the same by using a last-names-only policy similar to an athletic coach. RSA.39–40, 44. Further, Kluge was a teacher and not a school administrator. He did not bar transgender-identifying students from enrollment in school or even a class, and there are no allegations that he treated students differently. RSA.9-14.

Thus, his actions were in full alignment with Brownsburg's educational mission as set out in the Indiana Constitution. *See* IND.

CONST. art. 8, § 1; *see Nagy*, 844 N.E.2d at 487. In contrast, Brownsburg sent a clear message to teachers and students who share Kluge's religious beliefs. RSA.9-14. The school is open to all—meaning all who openly affirm transgender ideology, and others need not apply or enroll. *See Kluge* 64 F.4th at 917 (Brennan, J., dissenting).

For all of these reasons, the District Court should have held that Brownsburg acted in a manner contrary to its educational mission of maintaining a free school system "equally open to all" and that Kluge's religious accommodation did not create an "undue hardship" for Brownsburg. *See Nagy*, 844 N.E.2d at 487; *see Groff v. DeJoy,* 600 U.S. 447, 472 (2023).

In sum, Brownsburg's educational mission as set out in the Indiana Constitution simply requires that the school maintain a free school system that admits all students in its district. *Bonner*, 907 N.E.2d at 521. And that educational mission must be pursued in a manner consistent with the specific protections in the Indiana Bill of Rights for religious exercise and right of conscience. *See Hoagland*, 27 N.E.3d at 741. Brownsburg clearly failed to meet these constitutional requirements, and the District Court's decision should be reversed.

## II.     Brownsburg Must Exercise its Statutory Authority Consistent with the Indiana Constitution and Indiana Law.

The District Court stated the following in its most recent Order: "Even if the Indiana Constitution may well specify only that schools must be 'open,' Indiana law also grants a school corporation 'all . . . powers necessary or desirable in the conduct of the school corporation's affairs, even if the power is not granted by statute or rule… including BCSC's decision to pursue its mission to affirm the well-being of all students." RSA.33; *see* Ind. Code § 20-26-3-3(b)(2). This is incorrect for the reasons set out below.

Brownsburg's statutory authority under Ind. Code § 20-26-3-3(b)(2) must be exercised in a manner consistent with the Indiana and federal constitutions; and Brownsburg's explanation or at least exercise of its educational mission stands in direct conflict with the public policy of the state of Indiana. *See Goldberg v. Kelly,* 397 U.S. 254, 267 (1970); *see Hewitt v. Westfield Washington Sch. Corp.*, 46 N.E.3d 425, 433 (Ind. 2015); *see Nagy,* 844 N.E.2d at 491; *see* Ind. Code § 20.

### a.     Brownsburg Must Exercise its Statutory Authority in a Manner Consistent with the Indiana and Federal Constitutions.

The District Court cites I.C. § 20-26-3-3(b)(2) as justification for Brownsburg's decision to require its teachers to use students' transgender names and pronouns, but this analysis overlooks the very next Indiana code section. RSA.33.

According to Ind. Code § 20-26-3-4, "A school corporation may exercise any power the school corporation possesses to the extent that the power: (1) is not expressly denied by the Constitution of the State of Indiana, by statute, or by rule of the state board; and (2) is not expressly granted to another entity." *See Indiana State Bd. of Educ.*, 865 N.E.2d at 668.

Note that this code section authorizes a school corporation to exercise its powers unless expressly denied by the "Constitution of the State of Indiana"—and not just the Education Clause. *See* Ind. Code § 20-26-3-4. As explained above, the Indiana Constitution expressly prohibits any law that would "…in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience." *See* IND. CONST. art. 1, § 3.

The Indiana and United States Supreme Courts have also held that "…public schools are state actors subject to constitutional

21

oversight." *See Linke v. Nw. Sch. Corp.,* 763 N.E.2d 972, 979 (Ind. 2002); *see Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 655 (1995). Thus, neither the Indiana code nor state or federal precedent grants to Brownsburg the authority to create policies that impermissibly infringe on a teacher's religious exercise and right of conscience. *See* Ind. Code § 20-26-3-4; *see Linke,* 763 N.E.2d at 979; *see Vernonia Sch. Dist. 47J,* 515 U.S. at 655; *see Groff,* 600 U.S. at 472;  *see* 42 U.S.C. § 2000e-2(a)(1). For these reasons, the District Court's reliance on the school's explanation and exercise of its educational mission for purposes of the Undue Hardship analysis is fatally flawed. *See* RSA.33.

### b.  Brownsburg Must Exercise its Statutory Authority in a Manner Consistent with Indiana Law.

Article 8, Section 1 of the Indiana Constitution vests in the legislature—not a school corporation—substantial authority and discretion: "... to provide, by law, for a general and uniform system of Common Schools." *Nagy*, 844 N.E.2d at 491. And Brownsburg's explanation and exercise of its educational mission stands in direct conflict with the public policy of the state of Indiana. *See Kluge*, 64 F.4th at 817; *see* Ind. Code § 20-26-3-4.

For example, Indiana law designates student sports teams according to biological sex. *See* Ind. Code § 20-33-13-4(a). The same law also states: "A male, based on a student's biological sex at birth in accordance with the student's genetics and reproductive biology, may not participate on an athletic team or sport designated under this section as being a female, women's, or girls' athletic team or sport." *See* Ind. Code § 20-33-13-4(b). Brownsburg's requirement that teachers use students' transgender names and pronouns and the District Court's heavy reliance on that educational mission makes little sense in light of this law. *See Kluge*, 64 F.4th at 817. If a coach must require a male student (based on biological sex) to participate on a sports team consistent with that student's biological sex, surely an orchestra teacher using a last-names-only policy to refer to students does not constitute an undue hardship for the school. *See Id.*; RSA.33; *see* Ind. Code Ann. § 20-33-13-4(b).

Indiana law also prohibits "...a physician or other practitioner" from providing "...gender transition procedures to a minor." Ind. Code § 25-1-22-13. This law clearly distinguishes between "sex" as the "...biological state of being male or female, based on the individual's sex

organs, chromosomes, and endogenous hormone profiles" and "gender" as the "…psychological, behavioral, social, and cultural aspects of being male or female." Ind. Code § 25-1-22-1; Ind. Code § 25-1-22-12. And it states that medical professionals that perform or even aid in such procedures violate the medical "standard of practice" and risk professional discipline. Ind. Code § 25-1-22-15.

Though a similar law from Tennessee will be reviewed by the United States Supreme Court next term, this Court removed the stay on I.C. § 25-1-22-13; and it is currently in effect as the public policy of the state of Indiana. *L.W. by & through Williams v. Skrmetti*, 83 F.4th 460, 470 (6th Cir.), cert. granted sub nom. *United States v. Skrmetti*, No. 23-477, 2024 WL 3089532 (U.S. June 24, 2024); *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, No. 23-2366, 2024 WL 811523, at *1 (7th Cir. Feb. 27, 2024).

Indiana law further requires school officials to notify parents within five (5) business days if a student requests a change to the student's "(1) name or (2) pronoun, title, or word to identify the student." *See* Ind. Code § 20-33-7.5-2. The legislature passed this law in response to reports that school administrators were withholding

information about name changes and pronoun changes from the parents of students. *Id.*

Indiana law also protects the religious viewpoints of students and their parents that reject the separation of "biological sex" and "gender." *See* Ind. Code § 20-33-12-2 (providing that "[a] public school shall not discriminate against a student or a student's parent on the basis of a religious viewpoint or religious expression. A public school shall treat a student's voluntary expression of a religious viewpoint, if any, on an otherwise permissible subject in the same manner the public school treats a student's voluntary expression of a secular or other viewpoint on an otherwise permissible subject and may not discriminate against the student based on a religious viewpoint expressed by the student on an otherwise permissible subject").

Next, the Indiana Department of Education, pursuant to the authority delegated to it by the Indiana legislature, recently instructed Indiana public schools to wait to implement newly released regulations from the United States Department of Education concerning Title IX.

*See Nagy*, 844 N.E.2d at 491. The Department specifically instructed schools to wait until litigation concerning those policies is resolved.[2]

The Indiana Attorney General also sought and procured an injunction against the application of these new regulations in Indiana. *State of Tennessee, et al. v. Miguel Cardonoa, et al.*, No. 2:24-cv-072 (E.D. Ky. 2024)(Memorandum Opinion and Order). The Indiana Attorney General, along with the other state Plaintiffs, specifically raised concerns that the new Title IX regulations would force school officials and teachers in Indiana's 1,769 public schools to use names and pronouns inconsistent with a student's biological sex even if that practice violated the teacher's moral or religious values. *Id.* at 42.

Judge Reeves in the Easter District of Kentucky agreed and cited the brief of the United States in this case as proof that the federal government intends to mandate the use of preferred names and pronouns regardless of free speech concerns and conscience protections. *Id.* at 44-45; *see* Brief for the United States, *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861 (7th Cir. filed Nov. 8, 2021), ECF No. 34. Judge

---

[2] Rachel Fradette, "Indiana tells schools to ignore LGBTQ student protections as Title IX fight begins," WFYI INDIANAPOLIS (May 2, 2024) https://www.wfyi.org/news/articles/indiana-title-ix-new-rules-department-of-education-delay-rokita-lgbtq-students.

Reeves concluded, "The Department's Final Rule forces the Nation's schools and educators to convey a message ordained in Washington, D.C., while silencing dissenting opinions and undermining state law and the discretion of local school boards." *Id.* at 47.

In sum, no Indiana law requires a school corporation to compel its teachers to promote transgender ideology. *See* Ind. Code § 20. Instead, Indiana law designates sports teams based on biological sex, prohibits biological males from participating on teams designated for biological females, bans gender reassignment surgeries, requires schools to notify parents of any change to a student's name or pronouns, and protects the religious expression of students and parents. *See* Ind. Code § 20-33-13-4; *See* Ind. Code § 25-1-22-13; *See* Ind. Code § 20-33-7.5-2; Ind. Code § 20-33-12-2. Indiana's chief legal officer also recently sought and procured an injunction prohibiting federal regulations from enforcing the very same policy concerning transgender names and pronouns at issue in this case. *See State of Tennessee, et al. v. Miguel Cardonoa, et al.*, No. 2:24-cv-072 (E.D. Ky.  2024)(Memorandum Opinion and Order).

For all of the above reasons, Brownsburg's explanation and exercise of its educational mission requiring teachers to use transgender students' names and pronouns clearly contradicts (1) the text, history, and structure of the Indiana Constitution and (2) the public policy of Indiana. *See Nagy*, 844 N.E.2d at 491; *see* Ind. Code § 20-26-3-4. The District Court's repeated reliance on Brownsburg's educational mission is misplaced and should be reversed. *See* RSA.31-33.

## CONCLUSION

IFI is gravely concerned that this case will be used as precedent in Indiana's 1,768 other public schools to deny the religious accommodation requests of teachers that share Kluge's beliefs. The Indiana Constitution and Indiana statutes expressly forbid Brownsburg from crafting and pursuing an educational mission that ignores the religious exercise and conscience rights of teachers and contradicts the public policy of the state as defined by the state legislature. For these reasons, this Court should reverse and remand for entry of judgment in Mr. Kluge's favor on his discrimination and retaliation claims.

Respectfully submitted,

/s/Joshua D. Hershberger
Joshua D. Hershberger
HERSHBERGER LAW OFFICE
P.O. Box 233
Hanover, Indiana 47243
(812) 228-8783
josh@hlo.legal
*Counsel for Amicus Curiae*

July 17, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 29 because this brief contains 4,424 words, including words contained in the images and excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word using a proportionally spaced typeface, 14-point Century Schoolbook.

July 17, 2024

/s/ Joshua D. Hershberger
Joshua D. Hershberger
Counsel for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I, Joshua D. Hershberger, counsel for amici curiae and a member of the Bar of this Court, certify that, on July 17, 2024, a copy of the attached Brief of Amicus Curiae was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Joshua D. Hershberger
Joshua D. Hershberger
Counsel for *Amicus Curiae*