APPEAL NO. 24-1942

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

John M. Kluge,

*Plaintiff-Appellant,*

v.

Brownsburg Community School Corporation,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
Case No. 1:19-cv-02462-JMS-KMB
Hon. Jane Magnus-Stinson

## APPELLANT'S REPLY BRIEF

TYSON LANGHOFER
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707–4655
tlanghofer@ADFlegal.org

MICHAEL J. CORK
MICHAEL J. CORK, ESQ.
5754 N. Delaware Street
Indianapolis, IN 46220
(317) 517–4217
cork0@icloud.com

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(616) 450–4235
jbursch@ADFlegal.org

DAVID A. CORTMAN
RORY T. GRAY
TRAVIS C. BARHAM
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339–0774
dcortman@ADFlegal.org
rgray@ADFlegal.org
tbarham@ADFlegal.org

*Counsel for Appellant*

# TABLE OF CONTENTS

Table of Authorities...............................................................................iii

Introduction............................................................................................1

Argument.................................................................................................2

I.    Mr. Kluge is entitled to summary judgment on his religious discrimination claim because Brownsburg failed to show undue hardship. ......................................................................2

A.  Brownsburg withdrew Mr. Kluge's accommodation without the undue hardship *Groff* requires. .........................2

1.  *Groff*'s definition of undue hardship applies to public schools. ..................................................................2

2.  Brownsburg showed no substantial increased costs in the overall context of its business. ....................................3

3.  Brownsburg hasn't shown that letting Mr. Kluge remain silent harmed students or disrupted the learning environment. ...........................................5

a.  Brownsburg relies solely on accommodation complaints that *Groff* sets off-limits. ............................5

b.  Third-party grumblings can't show undue hardship. .....................................................7

c.  Employers can't sidestep *Groff* based on their purported "mission." .......................................8

d.  *Baz v. Walters* and Indiana law don't give Brownsburg free rein. ...................................10

e.  Respectful interaction that stops short of full affirmation doesn't show undue hardship. ..................12

f.  Brownsburg cannot rely on information it did not have when it forced Mr. Kluge to resign. ...................14

g.  Brownsburg's policy is bad for students. .....................16

4. Brownsburg hasn't shown that Mr. Kluge's accommodation placed it on the razor's edge of Title IX liability. ........................................................ 18

II. The district court erred in denying summary judgment to Mr. Kluge on his retaliation claim because Brownsburg's adverse actions were based on his protected activities. ........... 22

A. Mr. Kluge didn't waive his retaliation claim. ....................... 22

B. The retaliation claim deserves a fresh look after *Groff*. ...... 22

C. Mr. Kluge showed all elements of Title VII retaliation. ...... 23

D. Mr. Kluge doesn't need to prove pretext because he relied on direct proof, and Brownsburg had no legitimate reason to force his resignation. ............................... 27

III. Mr. Kluge's sincerity is beyond dispute. ................................... 28

Conclusion ........................................................................... 30

Certificate of Compliance ....................................................... 32

Certificate of Service .............................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Adeyeye v. Heartland Sweeteners, LLC,*
 721 F.3d 444 (7th Cir. 2013) ................................................29–30

*Alabama v. United States Department of Education,*
 2024 WL 3981994 (11th Cir. Aug. 22, 2024) ................................21

*Alerte v. McGinnis,*
 898 F.2d 69 (7th Cir. 1990) .............................................................17

*Ansonia Board of Education v. Philbrook,*
 479 U.S. 60 (1986) ...........................................................................25

*Arkansas v. United States Department of Education,*
 2024 WL 3518588 (E.D. Mo. July 24, 2024) ................................21

*Baz v. Walters,*
 782 F.2d 701 (7th Cir. 1986) ..........................................................10

*Boumehdi v. Plastag Holdings, LLC,*
 489 F.3d 781 (7th Cir. 2007) ..........................................................27

*Bradley v. Pizzaco of Nebraska, Inc.,*
 7 F.3d 795 (8th Cir. 1993) ..............................................................14

*Brener v. Diagnostic Center Hospital,*
 671 F.2d 141 (5th Cir. 1982) ............................................................8

*Bube v. Aspirus Hospital, Inc.,*
 108 F.4th 1017 (7th Cir. 2024).......................................................29

*Burns v. Southern Pacific Transportation Company,*
 589 F.2d 403 (9th Cir. 1978) .................................................7–8, 15

*Burwell v. Hobby Lobby Stores, Inc.,*
 573 U.S. 682 (2014) .........................................................................29

*C.S. v. Madison Metropolitan School District,*
 34 F.4th 536 (7th Cir. 2022)...........................................................20

*Carlson v. CSX Transportation Inc.*,
    758 F.3d 819 (7th Cir. 2014) ........................................................25

*Carroll Independent School District v. United States Department of Education*,
    2024 WL 3381901 (N.D. Tex. July 11, 2024) ..............................21

*Chaney v. Plainfield Healthcare Center*,
    612 F.3d 908 (7th Cir. 2010) ........................................................14

*Cullin v. Olin Corp.*,
    195 F.3d 317 (7th Cir. 1999) ........................................................14

*Department of Education v. Louisiana*,
    2024 WL 3841071 (U.S. Aug. 16, 2024) ..................................12, 21

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015) ........................................................................8

*EEOC v. Elrod*,
    674 F.2d 601 (7th Cir. 1982) ..........................................................2

*EEOC v. Ilona of Hungary, Inc.*,
    108 F.3d 1569 (7th Cir. 1997) ......................................................29

*EEOC v. North Memorial Health Care*,
    908 F.3d 1098 (8th Cir. 2018) ......................................................24

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018) ........................................................19

*Espinoza v. Department of Corrections*,
    509 F. App'x 724 (10th Cir. 2013) ................................................19

*Franks v. Bowman Transporation Company*,
    424 U.S. 747 (1976) ........................................................................6

*Giese v. City of Kankakee*,
    71 F.4th 582 (7th Cir. 2023) ........................................................23

*Grayson v. Schuler*,
    666 F.3d 450 (7th Cir. 2012) ........................................................29

iv

*Groff v. DeJoy*,
600 U.S. 447 (2023) ..............................1, 3–10, 13, 16, 18, 22, 24, 26

*Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*,
104 F.3d 1004 (7th Cir. 1997) ..........................................................25

*K.C. v. Individual Members of Medical Licensing Board of Indiana*,
2024 WL 811523 (7th Cir. Feb. 27, 2024) ................................ 11, 17

*Kansas v. United States Department of Education*,
2024 WL 3273285 (D. Kan. July 2, 2024) ....................................21

*Kennedy v. Bremerton School District*,
597 U.S. 507 (2022) ................................................. 9, 14–15, 18–19

*Korte v. Sebelius*,
735 F.3d 654 (7th Cir. 2013) ...................................................20–21

*Lam v. University of Hawai'i*,
40 F.3d 1551 (9th Cir. 1994) ........................................................14

*Lee v. Weisman*,
505 U.S. 577 (1992) .......................................................................9

*Louisiana v. United States Department of Education*,
2024 WL 2978786 (W.D. La. June 13, 2024) ................................21

*Louisiana v. United States Department of Education*,
2024 WL 3452887 (5th Cir. July 17, 2024) ...................................21

*Mahanoy Area School District v. B.L. ex rel. Levy*,
594 U.S. 180 (2021) .......................................................................9

*Matthews v. Wal-Mart Stores, Inc.*,
417 F. App'x 552 (7th Cir. 2011) ..................................................18

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ........................................................20

*Nichols v. Southern Illinois University-Edwardsville,*
  510 F.3d 772 (7th Cir. 2007) ......................................................27

*Passarella v. Aspirus, Inc.,*
  108 F.4th 1005 (7th Cir. 2024).....................................................29

*Peterson v. Hewlett-Packard Company,*
  358 F.3d 599 (9th Cir. 2004) ........................................................7

*Robertson v. Department of Health Services,*
  949 F.3d 371 (7th Cir. 2020) ......................................................28

*Tennessee v. Cardona,*
  2024 WL 3019146 (E.D. Ky. June 17, 2024)...........................12, 21

*Tennessee v. Cardona,*
  2024 WL 3453880 (6th Cir. July 17, 2024).............................12, 21

*Thomas v. Review Board of Indiana Employment Security
  Division,*
  450 U.S. 707 (1981) ...............................................................28–29

*Uhl v. Zalk Josephs Fabricators, Inc.,*
  121 F.3d 1133 (7th Cir. 1997) ........................................6, 15, 19

*Valley Forge Christian College v. Americans United for Separation
  of Church & State, Inc.,*
  454 U.S. 464 (1982) ....................................................................15

*Waldridge v. American Hoechst Corp.,*
  24 F.3d 918 (7th Cir. 1994) ...........................................................2

*West Virginia State Board of Education v. Barnette,*
  319 U.S. 624 (1943) ....................................................................13

*Whitaker ex rel. Whitaker v. Kenosha Unified School District No. 1,*
  858 F.3d 1034 (7th Cir. 2017) .....................................................19

*Zamecnik v. Indian Prairie School District No. 204,*
  636 F.3d 874 (7th Cir. 2011) ......................................................12

## Statutes

Ind. Code § 20-26-3-3 ................................................................ 11

Ind. Code § 20-33-7.5-2 ............................................................ 11

Ind. Code § 20-33-13-4 .............................................................. 11

Ind. Code § 23-1-22-2 ................................................................ 11

Ind. Code § 25-1-22-13 .............................................................. 11

## Other Authorities

Leor Sapir, *A Consensus No Longer*, CITY J. (Aug. 12, 2024) ................. 17

## Constitutional Provisions

IND. CONST. art. 1, §3 .............................................................. 11

# INTRODUCTION

Brownsburg pretends *Groff v. DeJoy*, 600 U.S. 447 (2023), changed nothing. It relies on manufactured complaints from two parents, seven students (0.067% of its student body), and four teachers (0.65% of its faculty) to justify revoking Mr. Kluge's Title VII accommodation. Even pre-*Groff*, that wasn't good enough—and it certainly isn't post-*Groff*. Undue hardship depends on Brownsburg showing Mr. Kluge's accommodation resulted in "substantial increased costs" or "expenditures" that are "substantial in the overall context of [its] business." *Groff*, 600 U.S. at 468, 470. But one teacher's *silence* on transgender terminology created no district-wide costs, let alone substantial ones.

Moreover, under *Groff,* complaints based on dislike of a religious practice or accommodation are "off the table" and can't show undue hardship. *Id.* at 472–73 (quotation omitted). Yet such grumblings, which never substantially disrupted the school's work, were Brownsburg's only contemporary reason for forcing Mr. Kluge to resign.

Brownsburg essentially asks this Court to "reimpose[ ] the de minimus standard that *Groff* rejected" and allow *any* complaint to scuttle a reasonable Title VII accommodation. 17StatesBr.4. But countermanding unanimous Supreme Court precedent and Congress's mandate that employers accommodate religious practices (popular or not) isn't the right answer. This Court should reverse and remand for the entry of summary judgment in Mr. Kluge's favor.

# ARGUMENT[1]

## I. Mr. Kluge is entitled to summary judgment on his religious discrimination claim because Brownsburg failed to show undue hardship.

Brownsburg concedes Mr. Kluge's prima facie case of religious discrimination and its burden of proof, Appellee'sBr.28–29. Accordingly, Brownsburg must "set forth *specific facts*" showing Mr. Kluge's silence on transgender terminology caused undue hardship under *Groff. Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (quotation omitted). It hasn't. So Mr. Kluge deserves summary judgment.

### A. Brownsburg withdrew Mr. Kluge's accommodation without the undue hardship *Groff* requires.

#### 1. *Groff*'s definition of undue hardship applies to public schools.

Brownsburg says public schools are "different," takes *Groff*'s reference to "common sense" out of context, and claims *Groff*'s undue-hardship benchmark doesn't apply. Appellee'sBr.31, 34, 37; *accord id.* at 38, 45. That's a nonstarter. In 1972, Congress subjected states and local governments to the same Title VII restrictions as private employers. *EEOC v. Elrod*, 674 F.2d 601, 604 (7th Cir. 1982). *Groff* analyzed one of those rules, *i.e.*, when a religious accommodation imposes undue hardship. And it did so in universal terms, never suggesting the undue-

---

[1] Citations to documents filed in this appeal reference the original or bates-stamp pagination, not the ECF-generated pagination. Citations to district-court documents refer to the ECF-generated pagination.

hardship metric changes based on an employer's identity or interests. *E.g.*, 600 U.S. at 468–73.

In fact, *Groff* involved the U.S. Postal Service, a public employer charged with universal mail service. *Id.* at 454. That agency doesn't "exist to maximize shareholder investment or raise money for a cause." Appellee'sBr.37. So there's no distinction; *Groff*'s standard controls.

## 2. Brownsburg showed no substantial increased costs in the overall context of its business.

Brownsburg highlights a few *Groff* snippets and ignores the rest of what it says. *E.g.*, Appellee'sBr.29–30. For instance, Brownsburg never acknowledges that the "fact-specific inquiry" into "'undue hardship'" turns on whether the accommodation's added "burden is substantial in the *overall context* of an employer's business." 600 U.S. at 468 (emphasis added). Yet that's what *Groff* "underst[ood] *Hardison* to mean," so that's the correct benchmark. *Id.* Brownsburg can't meet that standard—it doesn't even try.

*Groff* requires Brownsburg to cite specific facts demonstrating that allowing one teacher (Mr. Kluge) to remain silent on transgender terminology "result[ed] in substantial increased costs" in relation to "the overall context of" its public school operations. *Id.* at 468, 470. But the last-names accommodation didn't substantially burden the functioning of Mr. Kluge's *music classes*, let alone the district's *educational work overall*. While the accommodation was in place, no student dropped

orchestra or walked out of class, no official monitored Mr. Kluge's classroom, and there were no protests or other substantial obstacles in district offices or school halls. Appellant'sBr.11. All objective indications were that the accommodation worked. Granted, a few officials had some extra meetings, but Brownsburg disclaimed reliance on administrative costs. SA.301.

What's more, Mr. Kluge was the only accommodated teacher, but that didn't stop anyone else from using last names. Appellee'sBr.16. Other teachers addressed students by last names in preparing a school musical, *id.* at 22, just as coaches might during a game or practice. Brownsburg never barred objecting students from using peers' surnames. *Accord* Doc.52-3 at 3. Permitting Mr. Kluge—one teacher out of 600—to do the same imposed no additional district-wide costs.

Brownsburg says that a few people "complained" about Mr. Kluge using last names but not the similar conduct of others. Appellee'sBr.22. That's irrelevant. G*roff*'s "test" focuses on the accommodation's "*practical impact* in light of the nature, size[,] and operating cost of an employer." 600 U.S. at 470–71 (cleaned up; emphasis added). So Brownsburg can't make a mountain out of a molehill. Given its 10,000 students and 600 teachers, Appellant'sBr.34 n.4, a few complaints had no *practical impact* on Brownsburg's educational functions overall.

3.  **Brownsburg hasn't shown that letting Mr. Kluge remain silent harmed students or disrupted the learning environment.**

a.  **Brownsburg relies solely on accommodation complaints that *Groff* sets off-limits.**

Brownsburg pretends that only complaints with barefaced religious "animosity" are off-limits. Appellee'sBr.30, 35–36 (quotation omitted). But that's not all *Groff* says. The Court also put "off the table" objections based on (1) "dislike of religious practice and expression in the workplace or the mere fact of an accommodation," (2) "bias or hostility to a religious practice or a religious accommodation," and (3) "simple aversion to, or discomfort in dealing with, [certain religious] people." *Groff*, 600 U.S. at 472–73 (cleaned up). These categories encompass every accommodation complaint that Brownsburg cites to show undue hardship.

First, Brownsburg highlights a parental complaint, Appellee'sBr.12–13, made *before* the student's name was changed in Power-School, *i.e.*, when no transgender-terminology rule applied, Doc.120-12 at 2. Administrators never credited or acted on this grievance. Regardless, the email dubs Mr. Kluge's use of proper surnames as "disrespectful and hurtful," showing the parent disliked, was biased against, or was hostile to Mr. Kluge's religious practice or accommodation (or both).

Second, Brownsburg points to a few complaints from teachers and students who said Mr. Kluge's practice made them feel "hurt," "upset,"

"awkward," or "uncomfortable." Appellee'sBr.13–18. But this just shows a few people disliked his religious practice, had "discomfort in dealing with" certain people of faith, or resented that Brownsburg reasonably accommodated Mr. Kluge. *Groff*, 600 U.S. at 473.

Third, Brownsburg claims two students felt "targeted." Appellee'sBr.14–15, 34, 41. But Mr. Kluge's last-names accommodation treated *everyone* the same. Discrimination claims require "[f]acts," not "perceptions and feelings." *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997). Objectively, Mr. Kluge targeted no one; this opposition really concerns something else: "Mr. Kluge not calling them by their [transgender] name." Doc.120-14 at 11. And that's just dislike of Mr. Kluge's religious practice or workplace accommodation.

Last, Brownsburg reveals the boundless nature of its complaint theory. It says any student complaint—no matter how unfair, misguided, or petty—establishes undue hardship. *E.g.*, Appellee'sBr.35–36, 49. The only way a Title VII accommodation can survive, Brownsburg says, is if "*no one* complain[s] about it." *Id.* at 48 (emphasis added). But for decades it's been well-established that Title VII relief can't "be denied merely because the majority [let alone a small minority] … will be unhappy about it. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 775 (1976) (cleaned up). *Groff* makes that principle even clearer today. 600 U.S. at 472–73.

Relatedly, complainants were sufficiently aware of Mr. Kluge's religious beliefs or accommodation. Teachers knew of both. Doc.113-1 at 29–31; Doc.120-14 at 10; SA.257. One parent, who had known Mr. Kluge previously, expected him to "have difficulty with the [name] change" presumably because she knew he was religious. Appellee's Br.15. And objecting students reached the same conclusion, as only Mr. Kluge was exempt from the transgender-terminology rules and there was no other likely explanation. In fact, one student opposed Mr. Kluge maintaining his job in explicitly religious terms. Appellant'sBr.38.

In short, Brownsburg's only evidence of undue hardship consists of a few complaints that *Groff* puts "off the table." 600 U.S. at 472 (quotation omitted).

### b.   Third-party grumblings can't show undue hardship.

Even pre-*Groff,* a few third-party grumblings didn't show undue hardship on the employer's business. Brownsburg ignores these cases. This Court shouldn't. Title VII requires employers to "tolerate some degree of … discomfort" in accommodating religion. *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 607 (9th Cir. 2004). Undue hardship "requires more than proof of some … grumbling or unhappiness with a particular accommodation." *Burns v. S. Pac. Transp. Co.*, 589 F.2d 403, 407 (9th Cir. 1978). Courts distinguish between "*actual* imposition[s] on … or disruption[s] of … work," which may show undue hardship, and

7

"grumbling," which does not. *Id.* (emphasis added); *accord Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 147 (5th Cir. 1982) (distinguishing "mere grumbling" from "actual imposition on other[s]").

The complaints here fall squarely on the grumbling side of the line. *Supra* Part I.A.3.a. Because Brownsburg offers no evidence of actual impositions on or disruptions of its work, let alone a substantial burden on its overall operations, it hasn't shown undue hardship. YoungAm.'sFound.Br.12.

### c.   Employers can't sidestep *Groff* based on their purported "mission."

Brownsburg says it has the right to "define its own legitimate mission" and refuse to accommodate "an employee whose religious views are … at odds with [its] policy." Appellee'sBr.32, 34 (cleaned up). Wrong. "Title VII requires otherwise-neutral policies to give way to the need for an accommodation." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). Under *Groff*, there's nothing sacred about an employer's purported mission; what matters is if an accommodation's "burden is substantial in the overall context of an employer's business." 600 U.S. at 468. Brownsburg's "mission" argument is a misguided attempt to resurrect the low bar for undue hardship that *Groff* rejected.

Regardless, Brownsburg hasn't shown that allowing one teacher to remain silent on transgender terminology substantially burdened its overall efforts to "foster[ ] a learning environment of respect and

8

affirmation." Appellee'sBr.37. Mr. Kluge's "evenly applied, professional, and neutral accommodation" didn't reverse Brownsburg's goals. Women's.Liberation.Front.Br.9. He remained neutral and focused on teaching music. Doc.120-3 at 17.

With the accommodation in place, music education thrived. Mr. Kluge's classes "perform[ed] very well," students "respond[ed] well to [his] teaching," the orchestra performed "better than ever" in competition, students excelled on AP music-theory exams, several students received performance awards, and student participation in orchestra remained high. Doc.113-2 at 4; SA.282–83. Brownsburg never suggested the accommodation wasn't being followed or working, or investigated Mr. Kluge's classroom performance. Doc.120-14 at 12, 17. There's *no* objective evidence of *any* adverse impact on Brownsburg's purported mission.

Moreover, Brownsburg's "nature" as a public school district defines certain aspects of its business. *Groff*, 600 U.S. at 470. "America's public schools are the nurseries of democracy." *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 190 (2021). It's their job to teach students "how to tolerate speech … of all kinds." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 538 (2022). Brownsburg can't scrap this constitutionally imposed mission. Encountering "false ideas or offensive content" at school "is part of learning how to live in a pluralistic society." *Lee v. Weisman*, 505 U.S. 577, 590 (1992); *accord*

17StatesBr.15–21; N.C.Values.Inst.Br.15–18, 28. Public schools must teach that lesson.

### d. *Baz v. Walters* **and Indiana law don't give Brownsburg free rein.**

Brownsburg says a one-off case and Indiana law give it a blank check to identify its mission. Not true. *Baz v. Walters*, 782 F.2d 701, 706–07 (7th Cir. 1986), was decided under the more-than-*de-minimis*-cost standard, Appellee'sBr.38, which *Groff* rejected, 600 U.S. at 467–71. So *Baz* isn't good law. And this case is nothing like *Baz*. Mr. Kluge never discussed his religious beliefs with students or "proselytiz[ed]." *Baz*, 782 F.2d at 708. Nor did he "upend" or "actively interfere[ ] with" Brownsburg's purported philosophy or mission. Appellee'sBr.38 (cleaned up). He simply remained neutral—or "quiescent" and "passive"—on transgender terminology and focused on teaching music, which isn't "antithetical" to Brownsburg's educational goals. *Baz*, 782 F.2d at 704, 707.

Additionally, Brownsburg says its work has "constitutional and statutory dimensions" that give it free rein. Appellee'sBr.37. That position isn't credible. First, the Indiana Constitution merely requires public schools to offer a free education to all; it guarantees no particular quality or result. Ind.Family.Inst.Br.9–15; N.C.Values.Inst.Br.2–5. The statute Brownsburg cites gives school corporations "all … powers necessary or desirable … [to] conduct [their] affairs," Appellee'sBr.31,

33 (quoting Ind. Code § 20-26-3-3(b)(2)), the same as other Indiana corporations, Ind. Code § 23-1-22-2 ("powers … to do all things necessary or convenient to carry out [their] business"). There's nothing exceptional about public schools in that regard.

Second, Brownsburg's termination of Mr. Kluge for remaining neutral and declining to adopt transgender terminology *conflicts* with Indiana law. The Indiana Constitution prohibits public schools from "control[ling] the free exercise and enjoyment of religious opinions, or interfere[ing] with the rights of conscience." IND. CONST. art. 1, § 3; Ind.FamilyInst.Br. at 16, 21–22. Yet Brownsburg rescinded Mr. Kluge's accommodation, which protected both. Appellant'sBr.13–16.

What's more, Indiana statutes bar Brownsburg from putting biological male students on girls' athletic teams, Ind. Code § 20-33-13-4(b), and require Brownsburg to inform parents within five business days if their child seeks to socially transition by using a different name or pronoun, *id*. § 20-33-7.5-2. State law also bans Indiana doctors from providing "gender transition procedures to a minor." *Id.* § 25-1-22-13; *K.C. v. Indiv. Members of Med. Licensing Bd. of Ind.*, No. 23-2366, 2024 WL 811523, at *1 (7th Cir. Feb. 27, 2024) (staying injunction). Though all this may cause certain students to feel "awkward," "uncomfortable," or "targeted," they're what Indiana law requires. It's wrong to say that Brownsburg's mission—under state law—disallows permitting Mr. Kluge to remain silent on transgender terminology.

Last, Brownsburg's purported "mission" conflicts with Indiana's public policy on mandated transgender terminology. Brownsburg's approach mirrors the Biden Administration's new Title IX regulations, which the Indiana Department of Education instructed schools to ignore until litigation concludes. Ind.FamilyInst.Br.25–26 & n.2. Indiana obtained an injunction against these rules. *Tennessee v. Cardona*, No. 2:24-072, 2024 WL 3019146, at *44 (E.D. Ky. June 17, 2024). And the Sixth Circuit and Supreme Court denied the federal government's requests for a stay. *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *1 (6th Cir. July 17, 2024); *Dep't of Educ. v. Louisiana*, Nos. 24A78 & 24A79, 2024 WL 3841071, at *1 (U.S. Aug. 16, 2024) (per curiam).

In sum, *Groff* abrogates *Baz*, and Indiana's Constitution, statutes, and public policy support Mr. Kluge, not Brownsburg.

### e. Respectful interaction that stops short of full affirmation doesn't show undue hardship.

Brownsburg devised terminology rules so that transgender-identifying students would receive "'official' affirmation of their preferred identity." Appellee'sBr.8 (quotation omitted). But individuals have no "right to [affirmation] of their beliefs or even their way of life." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 876 (7th Cir. 2011). Mr. Kluge respected *all* his students and never addressed—let alone criticized—their life choices. Brownsburg responded by

"prescrib[ing] what shall be orthodox in … matters of opinion" like transgender terminology and "forc[ing] [Mr. Kluge] to confess by word or act [his] faith therein"—something public schools can't do. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

Brownsburg says these First Amendment principles are irrelevant. Appellee'sBr.40. Not so. *Groff* established a "fact-specific inquiry" that accounts for "all relevant factors in the case at hand, including the … *nature* … of an employer." 600 U.S. at 468, 470–72 (citation omitted; emphasis added). And *Groff* tests for "substantial *increased costs* in relation to the conduct of [the employer']s *particular business*." *Id.* at 470 (emphasis added). By nature, Brownsburg is a public school district. That particular business comes with constitutional restraints (like the First Amendment), not just statutory limits (like Title IX). N.C.ValuesInst.Br.8–14; Ind.FamilyInst.Br.15–22. There are no increased costs to Brownsburg abiding by preexisting First Amendment norms that bar the "[c]ompulsory unification of opinion." *Barnette*, 319 U.S. at 641.

Brownsburg derides Mr. Kluge's Sikh or Muslim teacher hypo-theticals, but it's Brownsburg's bare-complaint theory that's "extreme." Appellee'sBr.40. Under its approach, if seven students said they felt "hurt," "upset," "awkward," or "uncomfortable" because of their bias towards, or discomfort dealing with, Sikh or Muslim teachers, public schools could fire them for "harming minor students or disrupting the

learning environment." *Id*. That's wrong: Title VII bars employers from effectuating their clients' perceived biases. *E.g.*, *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010) (employer can't "cater to the perceived racial preferences of its customers"); *Bradley v. Pizzaco of Neb., Inc.*, 7 F.3d 795, 799 (8th Cir. 1993) ("[c]ustomer preference" isn't "a colorable business justification defense"); *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1560 n.13 (9th Cir. 1994) ("third party preferences" can't justify "discriminatory hiring practices").

### f. Brownsburg cannot rely on information it did not have when it forced Mr. Kluge to resign.

Brownsburg grounds its defense in large part on "justifications … invented *post hoc*," not on "contemporaneous" evidence, as the law requires. *Kennedy*, 597 U.S. at 543 n.8; *accord* YoungAm.'sFound.Br.7–12. Under Title VII, the only reasons that matter are those Brownsburg knew and relied on "*at the time [Mr. Kluge] was terminated.*" *Cullin v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999). Anything Brownsburg didn't know and rely on in constructively discharging Mr. Kluge "is totally irrelevant," *id.*; *accord* Appellant'sBr.43–44; YoungAm.'s.Found. Br.4–18, including two student declarations Brownsburg cites 26 times, which were "invented *post hoc* in response to litigation," *Kennedy*, 597 U.S. at 543 n.8.

Mr. Kluge detailed how Brownsburg's post-hoc defense turns on a "game of telephone." Appellant'sBr.44. Brownsburg derides this

argument as "meritless." Appellee'sBr.42. Yet its own brief confirms it: after-the-fact declarations are relevant, Brownsburg says, because "both students reported their concerns during Equality Alliance Club meetings, and the adult sponsor of those meetings, Craig Lee, in turn reported their concerns and those of other students to Dr. Daghe for eventual discussion with Kluge." *Id.* at 41 (citation omitted). That's a game of telephone, and it relies on multiple assumptions for which Brownsburg provides *no* evidence. Appellant'sBr.44. For instance, Sucec's declaration reveals what that student told a parent, not school officials. Doc.22-3 at 4. Worse, Brownsburg admits the declarations concern events that post-date Mr. Kluge's discharge. Appellee'sBr.41n.3.

Furthermore, Brownsburg stretches these declarations too far. Two students may have felt "uncomfortable," "awkward," or even "targeted," *id.* at 41, but those "feelings" don't change the "[f]acts," *Uhl*, 121 F.3d at 1137, or create a cognizable "personal injury," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Because Mr. Kluge treated these students the same as everyone else, there was no "actual imposition" on them. *Burns*, 589 F.2d at 407. Brownsburg "never raised concerns" about or disciplined Mr. Kluge for violating the last-names accommodation "contemporaneous[ly]." *Kennedy*, 597 U.S. at 543 n.8. Instead, Daghe offered Mr. Kluge a good reference if he resigned. Doc.15-3 at 5. And in

one-on-one conversations, Mr. Kluge wouldn't even use last names, as it would be obvious to whom he was speaking.

Nor does Sucec's withdrawal show undue hardship. Appellee's Br.41n.3. Sucec attributed that decision to health issues and events that occurred *after* Mr. Kluge's termination. Doc.22-3 at 4–5.

### g.    Brownsburg's policy is bad for students.

Brownsburg insists that letting Mr. Kluge remain silent on transgender terminology harmed students. Appellee'sBr.13, 17, 33–36, 38, 40, 43–44. But Mr. Kluge outlined scientific evidence showing that's incorrect because "encouraging gender dysphoria is harmful." Doc.113-1 at 21; Appellant'sBr.45–49. Brownsburg dubs this evidence "irrelevant" and "after-acquired." Appellee'sBr.42–43. Not so.

First, undue hardship depends on Brownsburg showing "substantial increased costs" to its overall business. *Groff*, 600 U.S. at 470. Mr. Kluge can point to any relevant evidence demonstrating that Brownsburg hasn't met this threshold. The after-acquired-evidence rule, which pertains only to the reasons for Mr. Kluge's termination, doesn't apply.

Second, Brownsburg's timing is wrong. At least eight of the studies Mr. Kluge cited predated his termination. Appellant'sBr.45–49. The same is true of many studies cited by his amici. *E.g.*, Med.Prof'ls. Br.6, 9–10, 13–16, 21, 27–29 (citing at least 21 pre-2018 studies); OurDutyBr.5, 10–12, 16, 24, 49 (citing eight).

16

Third, these studies aren't Mr. Kluge's personal "research." Appellee'sBr.42. They're peer-reviewed studies from the Endocrine Society, the English National Health Service, and other unimpeachable authorities. *Amici* outline still more, *e.g.*, Med.Prof'ls.Br.4–27; 17States Br.21–24; Advocs.ProtectingChildrenBr.12–17; OurDutyBr.6–23 & Ex. A, as well as individuals' personal experiences, Advocs.Protecting ChildrenBr.5–12; OurDutyBr.25–33. Recently, the American Society of Plastic Surgeons added its voice to the science Brownsburg impugns.[2]

Brownsburg claims Mr. Kluge seeks to "disregard the judgment of transgender students' parents and healthcare professionals." Appellee'sBr.42–43. That's false. Mr. Kluge never criticized or undermined their decisions. Mr. Kluge simply wanted to stay neutral and align *his own words* with his religious beliefs. Nor do parents' and healthcare professionals' opinions control legal realities, including undue hardship. *Cf. K.C.*, 2024 WL 811523, at *1 (staying injunction of Indiana statute barring gender transition procedures to a minor).

Last, "[w]hat's sauce for the goose is sauce for the gander." *Alerte v. McGinnis*, 898 F.2d 69, 72 (7th Cir. 1990). If Mr. Kluge and his amici's scientific evidence is irrelevant, so is that cited by Brownsburg's amici. *E.g.*, Nat'lAss'nSocialWorkersBr.7–21.

---

[2] Leor Sapir, *A Consensus No Longer*, CITY J. (Aug. 12, 2024), https://bit.ly/3YQ6jeI.

### 4. Brownsburg hasn't shown that Mr. Kluge's accommodation placed it on the razor's edge of Title IX liability.

Brownsburg insists that Mr. Kluge's accommodation created "an unreasonable risk of a Title IX lawsuit." Appellee'sBr.46. In other words, hecklers get the veto because the possibility of a meritless lawsuit scuttles any accommodation. *But see Groff*, 600 U.S. at 472 (adverse customer reaction can't thwart an accommodation); *Kennedy*, 597 U.S. at 534, 543 n.8 (no heckler's veto). That's not the law. As Brownsburg says elsewhere, undue hardship is possible if an accommodation places the employer "'on the 'razor's edge' of liability.'" Appellee'sBr.46 (quoting *Matthews v. Wal-Mart Stores, Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011)). Impending "liability" and possible "litigation" are worlds apart. 17StatesBr.4, 11. Here, Mr. Kluge's silence on transgender terminology didn't put Brownsburg down the barrel of any adverse judgment.

Brownsburg's Title IX argument fails for five reasons. First, Brownsburg says Mr. Kluge waived his argument that no contemporaneous evidence shows Title IX motivated its employment decisions. Appellee'sBr.44. Nonsense. Mr. Kluge's summary judgment brief says "the district never cited litigation concerns when it revoked Mr. Kluge's accommodation and forced him to resign." Doc.183 at 35. Brownsburg still fails to offer any "contemporaneous correspondence" or

other proof that Title IX motivated it at the time. *Kennedy*, 597 U.S. at 543 n.8. So it's Brownsburg's Title IX litigation defense that's out.

Second, Brownsburg can't show a credible sex-discrimination theory of Title IX liability. It says "treating transgender students differently than other students invite[d] litigation." Appellee'sBr.44 (quotation omitted). Yet "the critical *difference in treatment* was absent here." 17StatesBr.5 (emphasis added). This case is nothing like the Title IX or Title VII cases Brownsburg cites, all of which courts said involved treating transgender-identifying people *differently*. *E.g.*, Appellee's Br.44–46; *accord Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F.3d 1034, 1040–42, 49–50 (7th Cir. 2017) (disparate treatment); *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 575 (6th Cir. 2018) ("discrimination because of an individual's transgender status").

"By any measure, referring to all students in the same manner is not discrimination." 17StatesBr.9. The best Brownsburg can do is show a few students *felt* discriminated against. But "[f]acts, not … perceptions and feelings, are required to support a discrimination claim." *Uhl*, 121 F.3d at 1137; *accord Espinoza v. Dep't of Corrs.*, 509 F. App'x 724, 733 (10th Cir. 2013) (discrimination claims require "facts—not subjective opinions and feelings"). No facts justified students' complaints. Mr. Kluge explained his use of last names as an effort to instill camaraderie. That's what Brownsburg officials wanted him to

19

say, SA.276, and that's what he said, SA.293. If school officials had supported the accommodation in good faith, they would have done the same. But they let grumblings fester unchecked and forced Mr. Kluge to resign instead.

Third, Brownsburg's unadorned references to Title IX sex-stereotyping and hostile-environment claims are meritless. Appellee'sBr.45–46. There was nothing stereotypical or improper about using all students' last names. Coaches do this all the time. It was a "win-win" for everyone. *Meriwether v. Hartop*, 992 F.3d 492, 511 (6th Cir. 2021). Similarly, a hostile environment based on sex requires misconduct "so severe, pervasive, and *objectively offensive* that it can be said to deprive [students] of access to … educational opportunities." *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 542 (7th Cir. 2022) (quotation omitted; emphasis added). Yet there's nothing objectively offensive about calling students by their surname. Schools blazon them on the back of athletic jerseys.

Fourth, RFRA eliminates any likelihood of Title IX liability by creating "a broad statutory right to case-specific exemptions from [federal] laws that substantially burden religious exercise." *Korte v. Sebelius*, 735 F.3d 654, 671 (7th Cir. 2013). Brownsburg's transgender-terminology rules substantially burdened Mr. Kluge's religious practice. A Title IX plaintiff couldn't show that applying those rules to Mr. Kluge

"satisf[ies] the compelling-interest test." *Id.* So Title IX is no obstacle to Mr. Kluge's accommodation.

Fifth, Title IX doesn't mandate transgender terminology. 17StatesBr.6–10. Numerous district courts have reached that conclusion in enjoining the new Title IX regulations.[3] The Fifth and Sixth Circuits have refused to stay those injunctions.[4] The Eleventh Circuit granted an injunction pending appeal after a district court refused to enjoin the regulations.[5] And the Supreme Court declined to intervene at this stage.[6] So Brownsburg can't show that Mr. Kluge's accommodation placed it on "the razor's edge of liability." Appellee'sBr.43, 46 (quotations omitted).

Summed up, none of Brownsburg's Title IX theories have legs. Otherwise, Brownsburg wouldn't have agreed to the accommodation at the start. That it did shows the Title IX defense is unfounded.

---

[3] *E.g.*, *Cardona*, 2024 WL 3019146, at *8–13, 15–27 (DOE likely exceeded statutory authority and new Title IX regulations likely violate the First Amendment); *Kansas v. U.S. Dep't of Educ.*, No. 24-4041, 2024 WL 3273285, at *8–11, 13–15 (D. Kan. July 2, 2024) (same); *Arkansas v. U.S. Dep't of Educ.*, No. 4:24-cv-636, 2024 WL 3518588, at *13–18 (E.D. Mo. July 24, 2024) (same); *Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786, at *10–13 (W.D. La. June 13, 2024) (same); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461, 2024 WL 3381901, at *3–6 (N.D. Tex. July 11, 2024) (similar).

[4] *Louisiana v. U.S. Dep't of Educ.*, No. 24-30399, 2024 WL 3452887, at *3 (5th Cir. July 17, 2024); *Cardona*, 2024 WL 3453880, at *3.

[5] *Alabama v. U.S. Dep't of Educ.*, No. 24-12444, 2024 WL 3981994, at *9 (11th Cir. Aug. 22, 2024).

[6] *Dep't of Educ.*, 2024 WL 3841071, at *1.

## II.   The district court erred in denying summary judgment to Mr. Kluge on his retaliation claim because Brownsburg's adverse actions were based on his protected activities.

### A.   Mr. Kluge didn't waive his retaliation claim.

Brownsburg say Mr. Kluge "waived" his retaliation claim "years ago." Appellee'sBr.48. But this Court ruled that claim was "not waived." SA.75. Initially, the Court ruled against Mr. Kluge's retaliation claim on the merits. SA.77–80. Then, it vacated that ruling and remanded for the district court to apply *Groff*. SA.1. Regardless of whether the district court should have considered the retaliation claim on remand, it's incumbent on this Court to do so now, as the claim is live and unresolved.

### B.   The retaliation claim deserves a fresh look after *Groff*.

On remand, the district court failed to take Mr. Kluge's retaliation claim seriously, said "*Groff* does not even mention the word 'retaliation,'" and incorporated its prior analysis by reference. RSA.23. This facile "logic" fails. Originally, the district court rejected the retaliation claim based on supposedly "undisputed" evidence that Brownsburg officials "were acting because of complaints." SA.188. Brownsburg's retaliation defense still centers on "the nature and quality of the complaints" it received. Appellee'sBr.47–48. And *Groff* has much to say about complaints regarding "religious practice" or "religious accommodation"—they're "off the table." 600 U.S. at 472–73 (quotation omitted). If these complaints can't show undue hardship,

*supra* Part I.A.3.a, they can't justify terminating Mr. Kluge for sticking by a required accommodation either.

Brownsburg refuses to address this straightforward point and simply raises the red herring of "prejudice" based on responding to "arguments [now] that Kluge could have made two years ago." Appellee'sBr.47–48. Yet Mr. Kluge *did* make those arguments, years ago and lately: (1) to the district court originally, Doc.153 at 30–32; (2) to this Court in the first appeal, Doc.12-1 at 40–42; Doc.45 at 19–21, (3) to the district court on remand, Doc.183 at 38–41; Doc.186 at 41–44, and (4) to this Court in the present appeal, Appellant'sBr.57–63. There's no prejudice or unfair surprise, as Brownsburg effectively concedes by citing its "original summary judgment brief." Appellee'sBr.47.

## C.   Mr. Kluge showed all elements of Title VII retaliation.

Mr. Kluge prevails on his retaliation claim by showing "(1) [he] engaged in an activity protected by the statute; (2) [he] suffered an adverse employment action; and (3) there is a causal link between the [two]." *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023) (cleaned up). Brownsburg concedes Mr. Kluge established the first two elements. It challenges only the third—causation. Appellee'sBr.47–50.

Brownsburg attacks causation on five grounds, none of which hold water. First, Brownsburg says it maintained (*i.e.*, didn't retaliate against Mr. Kluge for requesting) the "uniform accommodation."

Appellee'sBr.48. True enough, but the reason is clear—"no one [who disliked Mr. Kluge's religious practice or uniform accommodation] complained about it." *Id.* That's not a benign reason, it's an admission that Brownsburg retaliated against Mr. Kluge for requesting the last-names accommodation based on illegitimate complaints that *Groff* puts "off the table." 600 U.S. at 472 (quotation omitted).

Second, Brownsburg says it didn't withdraw the last-names "accommodation until the beginning of the following school year." Appellee'sBr.48. That's irrelevant and wrong. Title VII's religious-accommodation mandate isn't time-limited; it's not like a bottle of milk that expires. Plus, Brownsburg announced mid-year via *Transgender Questions* that it was stripping away the accommodation, less than five months after officials first received a complaint. RSA.10, 17–18. Then officials told Mr. Kluge no accommodations were allowed and made Mr. Kluge choose between his faith and his job. Appellant'sBr.15–16. At a bare minimum, when an employer "adopt[s] a policy of not accommodating religious practices, an employee who was fired because [he] objected to this unlawful policy in requesting an accommodation [has] an opposition-clause retaliation claim." *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018).

Third, Brownsburg disputes that its only reason for forcing Mr. Kluge to resign was his religious objection and accommodation request. Appellee'sBr.48–49. Yet Brownsburg gives no other reason for construc-

tively discharging him. Brownsburg's consistent theme in this litigation has been criticizing Mr. Kluge for sticking by his religious practice and accommodation after a few complaints. *E.g.*, Appellee'sBr.2, 19–20, 48–49; Doc.113-4 at 26–27, 29; Doc.15-3 at 5; SA.283. Now Brownsburg calls Mr. Kluge "recalcitran[t] when made aware of those complaints." Appellee'sBr.49. But there's nothing wrong with Mr. Kluge invoking Title VII and adhering to an accommodation he reasonably believed the statute required. That's especially true as Brownsburg barred future religious accommodations and proposed no options that might "eliminate[ ] the conflict between [its rules] and [Mr. Kluge's] religious practices." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986).

Fourth, Brownsburg says too much time passed between the Superintendent's hostility towards Mr. Kluge's religious beliefs and the withdrawal of his accommodation and constructive discharge. Appellee'sBr.49. Yet the case it cites merely says that "suspicious timing *alone*" doesn't usually show causation. *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quotation omitted; emphasis added). Mr. Kluge's retaliation claim isn't based on the timing of one event, but on "a pattern of criticism and animosity" spanning the 2017–18 school year. *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1014 (7th Cir. 1997). Appellant'sBr.7–9, 13–18, 60–62.

Before the fall semester's end, Principal Daghe began pressuring Mr. Kluge to follow the policy or resign, and he did so again at the

beginning of the spring semester. *Id.* at 11–13. In January, Brownsburg unveiled *Transgender Questions*, announcing its no-accommodations policy. *Id.* at 13–15. The next month administrators informed Mr. Kluge of this rule in person and ordered him to use transgender terminology or resign, threatening his summer pay. *Id.* at 15–16. When Mr. Kluge succumbed to the pressure and submitted what he thought was a revocable resignation, officials refused to meet with him, locked him out, and posted his job as "vacant." *Id.* at 17–18. Brownsburg wanted Mr. Kluge to surrender his accommodation and violate his beliefs, or resign and get out of the way. Doc.113-4 at 12. Either way, it's an adverse employment action based on Mr. Kluge's protected activity.

Finally, Brownsburg claims there were "significant intervening events" that break causation. Appellee'sBr.50. But it never identifies those events or shows they were unrelated to Mr. Kluge's protected activity. Presumably, Brownsburg is referring to complaints based on dislike of Mr. Kluge's religious practice or accommodation, which *Groff* says aren't valid "consideration[s]." 600 U.S. at 472. They certainly don't disrupt the causal link between Mr. Kluge's protected activity (*e.g.*., seeking and maintaining a Title VII accommodation) and Brownsburg's adverse actions (*e.g.*., pressuring Mr. Kluge to resign, revoking his Title VII accommodation, denying all future accommodations, threatening his summer pay, and constructively discharging him).

### D.   Mr. Kluge doesn't need to prove pretext because he relied on direct proof, and Brownsburg had no legitimate reason to force his resignation.

Brownsburg doesn't dispute that a pretext showing is only required for retaliation claims based on indirect proof. Appellant'sBr.62. It just confuses *direct* proof with the *indirect* variety, citing examples of the latter in discussing the former. Appellee'sBr.50 (quoting examples of "circumstantial evidence" or indirect proof from *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)). But Mr. Kluge doesn't need indirect evidence because he has direct proof of retaliation.

Mr. Kluge's retaliation claim focuses on what Brownsburg "said or did in the specific employment decision in question" and statements from those who "exercised a significant degree of influence over the contested decision." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 781–82 (7th Cir. 2007) (cleaned up). Examples include the superintendent's angry theological debate; the principal's resignation demands; *Transgender Questions*, which criticized Mr. Kluge, the only teacher with an accommodation; and the principal and HR director's comply-resign-or-get-fired ultimatum that threatened Mr. Kluge's summer pay. Appellant'sBr.6–18. Plus, Principal Daghe told Mr. Kluge that Brownsburg would only "accommodate people who follow the policies," Doc.113-4 at 29, which means no accommodations allowed.

Brownsburg *still* criticizes Mr. Kluge for not abandoning his accommodation after complaints that *Groff* excludes from consideration.

*Supra* Part II.C. The reason is clear: Brownsburg had no evidence of "a legitimate non-discriminatory reason for taking [its] adverse employment action." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020). So Mr. Kluge doesn't need to show pretext and prevails on retaliation.

### III.   Mr. Kluge's sincerity is beyond dispute.

Brownsburg says that if this Court reverses on the discrimination claim, it should remand for a trial on Mr. Kluge's sincerity. Appellee's Br.51–53. That's not a credible argument. Brownsburg recognizes that Mr. Kluge has explained "there are instances where it is appropriate and consistent with his religious beliefs to address a transgender student by the student's first name, even if the first name differs from the student's biological sex." Appellee'sBr.52–53. So Mr. Kluge's doing so once at a year-end award ceremony contradicts nothing and creates no genuine issue of material fact.

Sincerity analysis considers *Mr. Kluge's actual religious views*, not the beliefs Brownsburg thinks he should have. It's no answer for Brownsburg to label Mr. Kluge's beliefs about what promotes transgenderism "arbitrary." Appellee'sBr.52. For it's well-established that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). Local governments (and courts) "have no

business addressing" whether Mr. Kluge's beliefs are "reasonable." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014).

Nor may Brownsburg rely on Mr. Kluge's church's teaching, Appellee'sBr.5, which it misunderstands, Appellant'sBr.29–30. Public schools (and courts) aren't "arbiters of scriptural interpretation," *Thomas*, 450 U.S. at 716, and Mr. Kluge's beliefs don't have to be "orthodox" in the government's eyes to merit protection, *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012).

This Court should reject Brownsburg's invitation "to define religious legitimacy," *Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017, 1020 (7th Cir. 2024), and "dissect [Mr. Kluge']s religious beliefs," *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024) (quotation omitted). Instead, the Court should reaffirm the "hands-off" approach to religious sincerity it has applied for decades. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013); *accord EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (recognizing the sincerity of the "not … particularly" or selectively religious); *Grayson*, 666 F.3d at 454 ("a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance").

Ultimately, Brownsburg denigrates Mr. Kluge's religious beliefs as a "purely personal preference" without citing a shred of evidence to back that up. Appellee'sBr.52 (quotation omitted). That's unacceptable.

Mr. Kluge was not just "willing to risk his job" to stand by his beliefs; he actually lost it. *Adeyeye*, 721 F.3d at 454. That amply shows sincerity.

There's no genuine dispute that Mr. Kluge's beliefs are sincere or that he proved a *prima facie* case of discrimination.

## CONCLUSION

Brownsburg failed to prove that accommodating Mr. Kluge's sincere religious beliefs—by letting him remain silent—caused an undue burden or that it had any legitimate reason for denying future accommodations and forcing Mr. Kluge to resign. All Brownsburg offers is a few third-party grumblings cloaked in pedagogical rhetoric that lack support, as *Groff* puts those complaints off the table. This Court should reverse and remand with instructions to enter summary judgment in Mr. Kluge's favor on his discrimination and retaliation claims.

Respectfully submitted the 30th day of August, 2024.

_/s/ David A. Cortman_

| | |
|---|---|
| Tyson C. Langhofer | John J. Bursch |
| ALLIANCE DEFENDING FREEDOM | ALLIANCE DEFENDING FREEDOM |
| 44180 Riverside Parkway | 440 First Street NW, Suite 600 |
| Lansdowne, VA 20176 | Washington, DC 20001 |
| Telephone:(571) 707–4655 | Telephone:(616) 450–4235 |
| tlanghofer@ADFlegal.org | jbursch@ADFlegal.org |
| | |
| Michael J. Cork | David A. Cortman |
| MICHAEL J. CORK, ESQ. | Rory T. Gray |
| 5754 North Delaware Street | Travis C. Barham |
| Indianapolis, IN 46220 | ALLIANCE DEFENDING FREEDOM |
| Telephone: (317) 517–4217 | 1000 Hurricane Shoals Rd. |
| cork0@icloud.com | Suite D-1100 |
| | Lawrenceville, GA 30043 |
| | Telephone: (770) 339–0774 |
| | dcortman@ADFlegal.org |
| | rgray@ADFlegal.org |
| | tbarham@ADFlegal.org |

_Counsel for Appellant_

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) and Seventh Circuit Rule 32 because this brief contains 6,461 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), as determined by the word counting feature of Microsoft Office 365.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) and Seventh Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook.

Respectfully submitted the 30th day of August, 2024.

*/s/ David A. Cortman*

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd.
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339–0774
dcortman@ADFlegal.org

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Respectfully submitted the 30th day of August, 2024.

*/s/ David A. Cortman*

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd.
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339–0774
dcortman@ADFlegal.org

*Counsel for Appellant*